EMMA STEVENS *et al.*

*v.*

JOHN WAIT *et al.*

*Filed at Springfield Sept. 27, 1884—Rehearing denied January Term, 1885.*

1. DESCRIPTION—*boundary—of its sufficiency, generally—oral evidence to explain ambiguity.* Any description of land in a deed of conveyance by which the identity of the premises intended to be conveyed can be established, is sufficient; and for the purpose of sustaining a grant, extrinsic evidence may be used to identify and establish the objects and calls in the deed. Oral evidence may be introduced to explain an ambiguity in a deed, but not to enlarge or vary its terms.

2. SAME—*rejecting a senseless or unmeaning portion of a description.* In attempting to describe a tract of land in a deed, by metes and bounds, giving courses and distances, three of the four lines necessary to the description—the south, east and north lines,—were plainly given, leaving no uncertainty. Then in producing the west line, it was described as running from the west end of the south line "north 60° 30′ west," etc., giving the distance, "to a stake." The course thus given would make this fourth line run, not

north to the west end of the north line, but nearly *west*, and would, in connection with the other three lines, inclose no land at all. So the words, "60° 30′ west," being unmeaning, were rejected as surplusage, leaving the line to read, "thence north," etc., "to a stake." In that way the description of the land was made certain.

3. SAME—*quantity controlled by courses and distances.* In the same deed, the first part of the description designated the land intended to be conveyed, as "34 69-100 acres off of the south side of the south-east quarter of section 14." But no importance was attached to that part of the description, as it was controlled by what immediately followed, giving the corners and boundaries of the land.

4. LIMITATIONS—*as between tenants in common.* One tenant in common can not set up the bar of the Statute of Limitations to defeat an action brought by his co-tenants, for the reason that his possession is not adverse. Possession of land, however long continued, unless adverse, will not defeat a recovery on behalf of the owner.

5. SAME—*whether possession is adverse.* The owner of land, while in its occupancy as a homestead, conveyed the same in fee, reserving in the deed, however, his homestead right. It was *held*, the continued possession of the premises by the grantor, after his conveyance, was not adverse to his grantee, because such possession was consistent with the deed.

6. TENANTS IN COMMON—*who considered as holding that relation.* An owner of land conveyed the same to his five children. One of the grantees afterwards reconveyed to the original grantor, but by deed purporting to convey, not the undivided one-fifth interest which he held, but the entire tract. It was considered, however, that the legal effect of the reconveyance was, under the circumstances, the same as if it had purported to convey only the interest which the grantor therein held—an undivided one-fifth part. So the original grantor, having thus acquired an undivided one-fifth interest in the land, became a tenant in common with the other four owners to whom he had previously conveyed, and his possession in that relation was not adverse to them.

APPEAL from the Circuit Court of Coles county; the Hon. J. W. WILKIN, Judge, presiding.

Mr. JOHN FAVORITE, and Mr. S. M. LEITCH, for the appellants.

Messrs. WILEY & NEAL, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Emma Stevens and Cornelia Canup, against John Wait and others, to partition a certain tract of land in Coles county, containing $34\frac{69}{100}$ acres. It is alleged in the bill that Emma Stevens, (formerly Emma Wait,) Cornelia Canup, (formerly Cornelia Wait,) together with John Wait, William Wait, and Samuel M. Russell, are owners in fee simple, as tenants in common, in equal parts (except Samuel M. Russell, who is owner in fee simple as tenant in common of two-fifteenths parts,) of the following real estate, in Coles county, Illinois, known and designated as follows, to-wit: Being $34\frac{69}{100}$ acres off the south side of the south-east quarter of the north-east quarter of section 14, in township 12, north of range 9, east, beginning at the intermediate corner on the east boundary line of the said section; running thence south 83° 40' west, seventy-nine poles to a stake on the road; thence north 6° 30' west, sixty-nine and one-quarter poles to a stake; thence north 84° east, seventy-nine and four-tenths poles to a stake in the section line; thence south 6° 30' east, sixty-eight and three-quarters poles to the place of beginning, containing $34\frac{69}{100}$ acres,— which said real estate is described in the records of deeds of Coles county, in said State, in a deed dated June 17, 1857, from Stephen Wait to Almarinda Wait, Cornelia Wait, Precilla Wait, Emma Wait, and William Wait, as recorded therein in words and figures following: "Situate, lying and being in the county of Coles and State of Illinois, known and designated as follows, to-wit: Being $34\frac{69}{100}$ acres off of the south side of the south-east quarter of section 14, in township 12, north of range 9, east, beginning at the intermediate corner on the east boundary line of the said section; running thence south 83° 40' west, seventy-nine poles to a stake on the road; thence north 60° 30' west, sixty-nine and one-quarter poles to a stake; thence north 84° east, seventy-nine

and four-tenths poles to a stake in the section line; thence south 6° 30′ east, sixty-eight and three-quarters poles to the place of beginning, containing $34\frac{69}{100}$ acres."

Stephen Wait owned the land in question on the 17th day of June, 1857, and on that day he made a deed to his children, Almarinda Wait, and others, with the intention, no doubt, of conveying the land to them; but it is contended the description of the premises contained in the deed does not describe the land which complainants claim in the bill,—and this is the first, and, indeed, the main, question presented by the record.

The correct description of the land is as follows: "Being $34\frac{69}{100}$ acres off of the south side of the south-east quarter of the north-east quarter of section 14, in township 12, north, of range 9, east, beginning at the intermediate corner on the east boundary line of the said section; running thence south 83° 40′ west, seventy-nine poles to a stake on the road; thence north 6° 30′ west, sixty-nine and one-quarter poles to a stake; thence north 84° east, seventy-nine and four-tenths poles to to a stake in the section line; thence south 6° 30′ east, sixty-eight and three-quarters poles to the place of beginning, containing $34\frac{69}{100}$ acres." The copy of a deed read in evidence by complainants, under which they claim title, describes the land as follows: "Being $34\frac{69}{100}$ acres off of the south side of the south-east quarter of section 14, in township 12, north of range 9, east, beginning at the intermediate corner on the east boundary line of the said section; running thence south 83° 40′ west, seventy-nine poles to a stake on the road; thence north 60° 30′ west, sixty-nine and one-quarter poles to a stake; thence north 84° east, seventy-nine and four-tenths poles to a stake in the section line; thence south 6° 30′ east, sixty-eight and three-quarters poles to the place of beginning, containing $34\frac{69}{100}$ acres." Does this deed convey the land?

The law is well settled that any description of land in a deed of conveyance by which the identity of the premises intended to be conveyed can be established, is sufficient, and

for the purpose of sustaining a grant, extrinsic evidence may be used to identify and establish the objects and calls in the deed. (*Colcord* v. *Alexander*, 67 Ill. 582; *Smith* v. *Crawford*, 81 id. 296.) Oral evidence may be introduced to explain an ambiguity in a deed, but such evidence is not admissible to enlarge or vary the terms of a deed.

In *Myers* v. *Ladd*, 26 Ill. 415, where a mortgage described the property as situated in the mill of the mortgagor, "in Lancaster, Timber township, Peoria county, Illinois," it was held that parol evidence was admissible to prove that the mortgagor had a mill four miles from Lancaster, in Timber township, in which was the property described, and that the mortgagor had no other mill in that county, and that the word "Lancaster," in the description, might be rejected as surplusage. It is there said: "The rule is, that where there are two descriptions in a deed, the one, as it were, superadded to the other, and one description being complete and sufficient of itself, and the other, which is subordinate and superadded, is incorrect, the incorrect description, or feature, or circumstance of the description, is rejected as surplusage, and the complete and correct description is allowed to stand alone." In *Kruse* v. *Wilson*, 79 Ill. 233, we had occasion to consider a similar question in reference to the construction of a description in one of the deeds which was read in evidence in the chain of title relied upon by one of the parties, and we there held, where one of the calls in the description of land in a deed was, "thence north-westerly along Mass street," etc., which, taken in connection with the other calls, was senseless and unmeaning, but which, by the omission of the word "north-westerly," and adapting the line to Mass street, answered the call, and made a complete description, the word "north-westerly" was rejected as surplusage. It is there said: "It is very evident the term 'north-westerly' has no business there, for a line running in that direction would enclose nothing. * * * Taken in connection with the other points and lines of

the survey, the description, 'thence north-westerly along Mass street five chains,' is senseless and unmeaning. Mass street, where the west line of this survey strikes it, runs north-east. By rejecting the word 'north-westerly,' the line is adapted to Mass street, and answers the call." These cases have an important bearing on the question involved in this case.

We attach no importance to the first part of the description contained in the deed, where the land is designated as "$34\frac{69}{100}$ acres off of the south side of the south-east quarter of section 14," as this is controlled by what immediately follows, giving the corners and boundaries of the land conveyed. In determining the location of the land, we have first the starting point, called the "intermediate corner on the east boundary line of the said section,"—that is, of section 14. The corner here mentioned we understand to be the government corner on the east line of the section, between the north-east and south-east quarters of section 14. In describing the land, here is a known corner as a starting point,—"running thence south 83° 40′ west, seventy-nine poles to a stake on the road." Here, also, is a definite line which can be followed, and the point on the road where the stake is called for can be found without any difficulty. There is no difficulty, then, as regards the south line and the south-west corner of the land. The east or fourth line of the land is plain from the description. It begins at a stake on the east line of the section, "thence south 6° 30′ east, sixty-eight and three-quarter poles," to the quarter corner. The north or third line of the land is plain from the description in the deed. It is a line running parallel with the first line from a certain point west of the stake which had been established on the east section line; from that point running "north 84° east, seventy-nine and four-tenths poles to a stake in the section line." Here are three lines,—south line, east line, and north line,—that are plain, and no uncertainty as to their location. Now, as to the west line, it is as follows: from the stake on

the road (the western terminus of the first line) "thence north 60° 30' west, sixty-nine and one-quarter poles." This, as it reads, in connection with the other, could not be the western line of the land. Indeed, it would, in connection with the other three lines, inclose no land whatever. The line, instead of running north from the stake on the road to the point where the third line begins to run east, runs nearly *west*. As said in the *Kruse case*, the words, "60° 30' west," are senseless and unmeaning, and should be rejected as surplusage. If rejected, that would leave the line to read: "Thence north sixty-nine and one-quarter poles to a stake." By the rejection of these words, which may be done under the authority of the two cases cited *supra*, the description of the land is certain and definite, and answers the call, and the call in all four of the lines is harmonious.

It is also claimed, that even if complainants ever had any right of action, the cause of action accrued more than twenty years before the filing of the bill, and the Statute of Limitations, set up in the answer, would bar a recovery. Stephen Wait, after the making of the deed in 1857, continued to occupy the land until his death, which occurred August 17, 1878, and since that time John Wait, his grantee, has been in the possession of the land. On the first day of September, 1866, Precilla Wait, one of the five children to whom Stephen Wait conveyed the land, conveyed her interest therein to Stephen Wait. After receiving that conveyance, he and his four children, who held the other four-fifths of the land, were tenants in common, and we understand the law to be well settled that one tenant in common can not set up the bar of the Statute of Limitations to defeat an action brought by his co-tenants, for the reason that the possession was not adverse. Possession of land, however long continued, unless adverse, will not defeat a right of recovery on behalf of the owner.

The decree of the circuit court will be reversed, and the cause remanded.                          *Decree reversed.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: One ground relied upon by the defendant to defeat the action, was possession and payment of taxes, under color of title, for more than seven years, which constitutes a bar to a recovery under the act of 1839. This defence, it is claimed in the petition for a rehearing, was overlooked by the court. But little was said in the opinion on this branch of the case, as we regarded it a minor point,—one not seriously relied upon. In the opinion, we held that the possession relied upon was not adverse, but that the land was occupied by a party who was a tenant in common, and hence the Statute of Limitations could not be invoked as a defence. A brief reference to the facts is all that is required to show that the possession relied upon by the defendant to bring his case within the statute was not adverse.

On June 17, 1857, Stephen Wait, who owned the premises, conveyed the same, by general warranty deed of conveyance, to his five children, Almarinda, Cornelia, Emma, Precilla and William Wait, excepting his homestead interest therein. After the making of this deed the grantor continued to occupy the premises as before, as he had a right to do under the clause in the deed reserving a homestead. In 1866, Precilla, one of the grantees, conveyed, by quitclaim deed, the premises back to Stephen Wait. This deed, although the grantor only owned an undivided one-fifth of the premises, purported to convey the whole tract, and seven years' possession and payment of taxes under this deed, by Stephen Wait, is relied upon to bar a recovery, under the act of 1839, and defeat the title held by Almarinda, Cornelia, Emma and William Wait, the four children named as grantees in the deed made by Stephen Wait in 1857.

It is manifest that possession and payment of taxes by Stephen Wait, after his conveyance in 1857, and before he obtained the deed from Precilla, in 1866, can not be relied

upon to bar an action, under the statute, for the reason that the deed made by Wait to his children provided that Wait should retain a homestead in the premises. His possession was consistent with the deed and in harmony with the deed. Indeed, his possession was in no sense adverse, and can not, for that reason, fall within the Statute of Limitations. Was the character of the possession changed after Stephen Wait procured a deed from Precilla, in 1866? If she had conveyed merely her undivided one-fifth interest, and Wait held under such deed, he would be merely a tenant in common with the other four owners, and possession and payment of taxes, however long continued, would not constitute a bar, under the statute, as one tenant in common can not set up the statutory bar against his co-tenants. (*Dugan* v. *Follett*, 100 Ill. 585.) The deed, however, made by Precilla, purported on its face to convey, not an undivided one-fifth of the land, but the entire tract; but under the facts of this case, the legal effect of the deed was the same as if only an undivided one-fifth had been conveyed. Stephen Wait had conveyed, as before observed, by general warranty deed, and whatever title he obtained from Precilla, aside from her one-fifth interest, under the covenants of his warranty deed, passed on the delivery of that deed to the grantees of Wait, Almarinda, Cornelia, Emma and William Wait, or their heirs or assigns, and he and they then held the title as tenants in common, Wait owning one-fifth of the title and they four-fifths. This was the situation of the parties after the making of the deed in 1866, and so long as they occupied this position the possession of Wait could not be adverse. His possession was that of a tenant in common, and as such he could not, nor can his grantee, invoke the aid of the Statute of Limitations of 1839 to bar a recovery on behalf of his co-tenants. *Bush* v. *Huston*, 75 Ill. 344; *Ball* v. *Palmer*, 81 id. 370.

The petition for a rehearing will be denied.

*Rehearing denied.*