William C. Rich, Sr. *et al.*

*v.*

Trustees of Schools.

*Filed at Mt. Vernon October 16, 1895.*

1. Appeals and errors—*objection to evidence as being secondary must be specific.* The inadmissibility of evidence because there is other better evidence of the fact cannot be raised on appeal, if the only objection on the trial was a general one.

2. Equity—*will sustain executed sale by school director to his district.* Equity will sustain an executed sale of a school house site to a district by one of its directors, after large expenditures by the district in improving the property, even though such sale was unlawful while executory only.

3. Same—*when equity will correct description in deed.* A mistake in the description of land in conveyances may be corrected, in equity, even if the false description might be rejected as surplusage and still leave a sufficient description.

4. Cloud—*facts which show a cloud on title.* A deed by and a judgment against a person who had previously made a valid conveyance of the land, which is recorded, but which is attacked as invalid by those claiming under the later deed and judgment, constitute mere clouds on the title, which equity may remove.

Appeal from the Circuit Court of Union county; the Hon. Joseph P. Robarts, Judge, presiding.

Taylor Dodd, and W. C. Moreland, for appellants:

If the deed from Abernathie was illegal and void nothing passed by it to appellees, for the reason that a void instrument is as though it had never been executed. Rev. Stat. 1874, chap. 122, sec. 48, p. 693; 3 Am. & Eng. Ency. of Law, p. 872; *Penn* v. *Bornman*, 102 Ill. 523; *Railroad Co.* v. *Lewis*, 109 id. 131; *Village of Dwight* v. *Palmer*, 74 id. 295.

A court of equity will not exercise its power to correct a mistake and cancel a conveyance of the parties thereto, where such correction or cancellation would affect the rights of third parties acquired without notice of any mistake. 15 Am. & Eng. Ency. of Law, p. 679, sec. 13.

Neither of the defendants had either actual or constructive notice, and hence they will not be required to suffer loss because of any mistake in the deed to the complainant. *Massey* v. *Westcott,* 40 Ill. 160; *Guiteau* v. *Wiseley,* 47 id. 433; *McFadden* v. *Worthington,* 45 id. 362; *Milmine* v. *Burnham,* 76 id. 362; *Buggy Co.* v. *Graves,* 108 id. 459; *Munford* v. *McIntyre,* 16 Ill. App. 316.

Karraker & Lingle, for appellees:

There is what may be termed a correct and an incorrect description in the deeds referred to. The particular description is certain and sufficient to enable any competent surveyor to locate the plat of ground in question. *Stevens* v. *Wait,* 112 Ill. 544.

Where there is a correct and an incorrect description, the correct one will be adopted and the incorrect one rejected. *Holsten* v. *Needles,* 115 Ill. 461; *Bowen* v. *Allen,* 113 id. 53.

Mr. Justice Baker delivered the opinion of the court:

This is a bill in equity that was exhibited in the Union circuit court by the trustees of schools of township 11, south, range 2, west, against William C. Rich, Sr., and Ed Samson, the two appellants, and William R. Abernathie and others, for the purpose of correcting mistakes in two deeds and also removing clouds from their title.

It appears from the allegations of the bill, the evidence at the hearing and the findings in the decree, that on February 21, 1879, said Abernathie and wife and one Harreld and wife made a deed to H. R. Buckingham for two acres of land. It also appears that on February 24, 1879, said Buckingham and wife made a deed for the same premises to the said trustees of schools, who were complainants below and are appellees here. It is also a part of the case that in each of said deeds a like mistake was made by the scrivener, the description of the land in one being copied from that found in the other. The description of the land conveyed, as it was written in the deeds

by the draftsman, was as follows: "The following described real estate, situated and being between Jonesboro and Murphysboro road and the right of way of the Cairo and St. Louis railroad, bounded as follows, to-wit: Commencing at a point on said Jonesboro and Murphysboro road on the north line of the town plat of the town of Alto Pass; thence north along said Jonesboro and Murphysboro road (420) four hundred and twenty feet; thence west to the right of way of said Cairo and St. Louis railroad; thence south along the said right of way to the north line of said town plat, and thence east on said line to the place of beginning, containing two (2) acres, it being a part of the north-west quarter of the south-east quarter of section (10) ten, township 11, south of range (2) two, west, situated in the county of Union, in the State of Illinois." The mistake, as is shown by the pleadings and proofs, was in inserting in the deeds the words "south-east quarter," instead of the words "south-west quarter." The court, in its decree, corrected the mistake as prayed for, and it is claimed by appellants that the court, in so doing, committed error. The claim is, that the deeds were illegal and void, and did not pass title to appellees.

The claim of invalidity, as we understand counsel, is based on two grounds: First, that the board of directors of school district No. 5, in said township 11, located the school house site on the land in question without complying with the requirements of the first clause of the last paragraph of section 48 of chapter 122 of the Revised Statutes of 1874; and second, that Abernathie was a school director of the district and sold the land for a school site to the other directors, and such sale being illegal and void, he attempted to convey indirectly, by means of a deed from himself to Buckingham and a deed from Buckingham to the trustees of schools.

Said clause of section 48, which is retained as a part of section 31 of article 5 of the present School law, provides that it shall not be lawful for a board of directors

to purchase or locate a school house site, or to purchase, build or move a school house, or to levy a tax to extend schools beyond nine months, without a vote of the people, at an election called and conducted as required in section 42 of the act. We find, upon looking into the evidence in the record, that H. R. Buckingham testifies, that before the making of these deeds there had been an election in school district No. 5 for the purpose of selecting a school site for a school building, and there were two sites to be chosen from,—one at or near where W. E. Harreld's dwelling now stands and the other where the school house now stands,—and that the plat of ground where the school house now stands was chosen. It is true that objection was made to this testimony, but it was only a general objection. If a specific objection had been made that there was record or better evidence of the election and its result, and no evidence that notice was given as required by law, it is probable that the record and better and additional evidence would have been produced. As it was, it was not error to overrule the objection and consider the evidence in the decision of the case. We have in numerous cases announced the rule that a general objection will not avail in cases where, if the objections were made specific, they were removable or might be obviated, and the presumption in this collateral proceeding must be that the school officers performed their duty and gave the required notice of the election. Our conclusion from this record is, that a lawful election was held, and that the provisions of the statute were complied with in locating the school house site.

In regard to the fact that Abernathie was a school director of the district at the time he sold the land to the district for a school site, we may say that the evidence seems to preclude any conclusion that there was any fraud in fact in the transaction, and our attention has been called to no provision of the statute in force in 1879, and we know of none, that made it unlawful for a

director to sell a site for a school house to the district in which he was such director. There was a provision in force (sec. 77) that no district school officer should be interested in the sale, proceeds or profits of any book, apparatus or furniture used or to be used in any school house with which he was connected; but that provision did not apply to the case of the sale of this site for a school house.

But even if the statute in terms declared that such a sale was unlawful, yet the results insisted upon by appellants would not follow, at least in the absence of an express provision of the statute that the deed made to or for the benefit of the district should be null and void. Such a provision would be, and somewhat similar provisions are, intended for the benefit and protection of the school district, and its inhabitants and tax-payers. It might well be, in such a case, that while the contract was still executory it could not be enforced; but where, as in this case, it has been fully executed, and the purchase money has been paid to the director, and he has made and delivered a deed and given possession, and the school district has expended several thousand dollars in building a school house and improving the property, no court of equity would permit either the school director or his grantees or creditors to wrest the school house site and the school house from the school district, or from the township trustees who hold the property in trust for the district, upon any such plea as that the original contract for the purchase of the school house site was unlawful.

When, on May 13, 1879, Abernathie made a deed to John Crisp of land which included within its bounds the school site in question, the school directors were already in the actual possession of the premises and had commenced the construction of a brick school house thereon, and the deed from Abernathie to Buckingham had been duly filed for record nearly three months before. Of

course, either of these facts was sufficient to prevent the deed of May 13 from becoming effective to pass the title to said land, and so the deed that appellant Rich afterwards got from Crisp is a mere cloud on the title of appellees. It needs no argument to show that the judgment that Rich recovered in 1882 against Abernathie never became a lien on the land. Even the deed from Buckingham to the trustees of schools had been recorded for over two years prior to the date of that judgment. There is no ground for claiming that said judgment, and the execution issued thereon, and the levy on this land as the property of Abernathie, and the subsequent sale and sheriff's deed to the two appellants now before us, passed the title to said land. That alleged title is also a mere cloud upon the title held by appellees.

As we understand the record, the north line of the corporate limits of the village of Alto Pass is a wholly different line from the north line of the town plat of the town of Alto Pass, and there is no sufficient ground for claiming that the two deeds by which the title to the school site was conveyed from Abernathie to the trustees of schools covered lots 6 and 7 of block "B," of Abernathie's addition, and it follows that the Abernathie trust deed and the deed made by the trustee to appellants are here entirely immaterial.

We find no error in the decree correcting the mistakes in appellees' chain of title and removing clouds therefrom. It may be doubted that it was really necessary to correct the mistakes in the deeds. The false description could be rejected as mere surplusage, and still leave a good, sufficient and certain description of the land conveyed. *Stevens* v. *Wait,* 112 Ill. 544; *Bowen* v. *Allen,* 113 id. 53; *Holston* v. *Needles,* 115 id. 461.

The decree is affirmed.          *Decree affirmed.*