DANIEL JOINER *et al.*

*v.*

LARKIN DUNCAN *et al.*

*Opinion filed June 18, 1898—Rehearing denied October 6, 1898.*

1. SPECIFIC PERFORMANCE—*when contract to re-convey should be specifically enforced.* A contract by which the assignee of a certificate of purchase, on foreclosure, agrees to re-convey the property to the mortgagor upon the re-payment of the sum advanced by the assignee, with interest, within a specified period, may be enforced in equity upon the mortgagor's compliance with the conditions, though the assignee has obtained a master's deed to the property.

2. WITNESSES—*husband cannot testify to declarations of wife during marriage.* Admissions or declarations of the wife during marriage cannot be proved by husband in an action between other parties.

3. NOTICE—*actual possession is notice of the possessor's title.* Actual possession of land is notice equal to the record of the deed under which the party in possession claims, and a purchaser or mortgagee is bound to inquire into the possessor's title, as he takes subject thereto, whatever it may be.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding.

JOHN B. HAY, and WILLIAM WINKELMANN, for plaintiffs in error.

ROPIEQUET, PERRIN & BAKER, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a bill in equity, brought by the plaintiffs in error to enforce the specific performance of a contract for the conveyance of a tract of land in St. Clair county, consisting of fifteen acres, described as lot 10, being a part of the north-west quarter of section 2, township 2, north, range 7, west, and also to remove as a cloud on the title a certain mortgage executed by Hannah Duncan to Anthony Pfeiffer for the sum of $500. The cause proceeded to a hearing on the pleadings and evidence, and the court entered a decree dismissing the bill, and also entered a decree of foreclosure in the cross-bill of Anthony Pfeiffer, decreeing the premises to be sold in payment of the $500 mortgage held by him. To reverse the decree the complainants sued out this writ of error.

It is averred in the bill and admitted in the answers that on July 7, 1885, Daniel and Mary Joiner were the owners in fee of the premises in controversy. They then resided on the land and had resided upon it for a number of years before. On the date last mentioned, as appears from the evidence, plaintiffs in error mortgaged the land to James Waugh to secure the sum of $175. In 1886 Waugh died, and Joseph M. Dill, administrator of his estate, foreclosed the mortgage. The premises were sold and bid off by Dill for $273.80, and a certificate of purchase was issued to him bearing date June 28, 1886. On the 27th day of June, 1887, Dill assigned the certificate to Larkin Duncan, and on the 22d day of November, 1887, Duncan assigned the certificate to his wife, Hannah Duncan, and

on the 7th day of February, 1888, she obtained a deed. It also appears from the evidence that after the Duncans had procured an assignment of the certificate of purchase a contract was executed and delivered to the Joiners, which read as follows:

"*Know all men by these presents:* That I, Larkin Duncan, of St. Clair county, Illinois, am held and firmly bound unto Mary Joiner and Daniel Joiner in the sum of $300, for the payment well and truly to be made I bind myself, my heirs, executors, administrators, and each and every of them.

"The condition of the obligation is such, that if the said Mary and Daniel Joiner shall well and truly pay or cause to be paid unto said Duncan, her executors, administrators or assigns, the sum of $50 on the first day of August, 1888, $50 on the first day of August, 1889, $50 on the first day of August, 1890, $50 on the first day of August, 1891, $50 on the first day of August, 1892, and the balance on the first day of August, 1893, out of said several payments when made the interest, at the rate of eight per cent, is to be taken out on the sum of $295.65, and balance of said $50 payment to be credited on the sum of $295.65, until the full sum is paid. Upon the payment of said last named sum of money, together with the interest thereon as herein specified, said Duncan hereby agrees to convey to said Mary and Daniel Joiner lot No. ten (10), being part of the south-west quarter of the north-west quarter of section 2, township 2, north, range 7, W., containing fifteen acres, as will more fully and at large appear on a plat of said section No. 2 recorded in the recorder's office of St. Clair county, Illinois, in book A of plats, at page 246. But if default shall be made in the payment of any or either of said several sums of money on the days and times mentioned and appointed herein, then this bond to be void, otherwise to remain in full force and virtue.

His<br>LARKIN X DUNCAN.    [Seal.]<br>Mark.

"Attest:—WILLIAM WINKELMANN."

Respecting this contract Larkin Duncan testified, as appears from the abstract, as follows: "The contract was made to her. I was acting as her agent. She furnished the money. The money she furnished was paid back. Joiner sent money several times. I won't say exactly how much, but many times I would go there and

Joiner would say, 'There is some money for you,' and I said: 'Joiner, I will take it to her and let her keep the books; I don't know anything about that; you and her made the contract and I don't know anything about it, but I will carry it to her and she shall keep an account.' She kept the account, and kept it all settled up with Joiner. I was right there when that piece of paper was made with her name on the back of it." Witness was shown the writing on the back of the contract, and said: "That is her handwriting. She acknowledged payment in full, but Joiner wouldn't receive the deed. He told her he did not want a deed just now. There appeared some other trouble that he was afraid he might get into, and he didn't want the deed."

Counsel read in evidence the receipt on the back of said contract above set forth, as follows:

"Bond for a deed.—L. Duncan to Mary and Daniel Joiner.

"Received of Daniel Joiner and Mary E. Joiner on sed note $300.—16th of October, 1893.     HANNAH DUNCAN."

Duncan further testified: "Before she died she told her heirs to deed this property back to the Joiners,— that the Joiners had paid her all they owed her. She wrote that on the back, right before the Joiners. I had no interest in that thing. The money was advanced by her entirely. She got the money that she advanced to the Joiners from Mr. Fischer."

In connection with this evidence the complainants called as a witness Gustave Vincent, who testified as follows: "Mrs. Duncan told me that Daniel Joiner was an honest man,—that he had paid her every dollar that he owed her. She was sick at the time, and was talking about her business. She said she had stood for him and he had paid her every dollar that he owed her. This was about two years before her death." Mrs. Townsend, another witness, testified: "In a conversation I had with Mrs. Duncan I said, 'Mr. Joiner is a very nice man.' She said, 'Yes, and a very honest man; he owed me $300 and

he paid me in full for all of it.' I think she said she held his notes. She said she furnished this money for a mortgage on his land and he had paid her up for it. I think this was in 1894."

The Statute of Frauds was not pleaded or relied upon as a defense in this case, and the only question to be determined is whether the evidence introduced on the hearing was sufficient to entitle complainants to the relief prayed for in the bill. In passing upon that question it will be necessary to exclude from consideration that portion of Larkin Duncan's evidence wherein he testified to the declarations of his wife, Hannah Duncan, as such evidence was not admissible at common law or under the statute. (*Goelz* v. *Goelz*, 157 Ill. 33.) If this action had been one between husband and wife the evidence might have been competent; but the action was not between husband and wife, and the declarations of the wife could not be proven by her husband. Excluding, therefore, that part of Duncan's evidence in regard to the declarations of the wife, we think there remains ample evidence to authorize a decree in favor of complainants. The land in controversy had been sold in satisfaction of a mortgage given by Daniel and Mary Joiner to Waugh. They were desirous of making an arrangement with some person to advance the money to redeem the land and give them time to pay off the encumbrance. A contract was made under which the money necessary to pay off the mortgage was advanced, and the certificate was assigned to Larkin Duncan and he assigned it to his wife. They never bought the land. There is no evidence in the record tending to prove that Duncan or his wife purchased this land from any person. The form the transaction assumed, in the absence of other evidence, might indicate that Hannah Duncan was a purchaser, but that is all. Larkin Duncan testified that he acted as agent for his wife and she furnished the money to take up the certificate of purchase, and the money she furnished was paid back. In

addition to this evidence the receipt of Hannah Duncan on the back of the contract shows that she received the money. Moreover, the evidence of Mrs. Townsend shows that Mrs. Duncan held the land as security for the money she advanced to pay off the Waugh mortgage, and that she had been re-paid. If, then, Hannah Duncan took an assignment of the certificate of purchase, and held the title as security for the re-payment of the money she advanced, with interest, under an agreement made by her husband as her agent that the title should be re-conveyed to Daniel and Mary Joiner upon the payment of $295.65, and interest thereon, when the money was paid, as the evidence shows it was, on the 16th day of October, 1893, she was bound to make a deed to them at any time they might require it.

One other feature of the case remains to be considered. It appears that on the 10th day of October, 1894, Hannah Duncan executed a mortgage on the premises to one Anthony Pfeiffer to secure the payment of $500, which was acknowledged and duly recorded in the recorder's office in St. Clair county. At the time this mortgage was executed Daniel and Mary Joiner were in the actual possession of the premises, residing thereon. Their possession was notice to all persons of the title they held in the premises. Actual possession of land is notice equal to the record of a deed under which the party in possession claims, and a purchaser is bound to inquire by what right or title the party in possession holds, and he will take subject to that title, whatever it may be. (*Coari* v. *Olsen*, 91 Ill. 273; *Morrison* v. *Morrison*, 140 id. 560.) When Pfeiffer took his mortgage, as the Joiners were in possession of the premises, it was his duty to inquire of them under what right or title they occupied. Had he observed this duty he would have learned that Hannah Duncan had no title which she could mortgage. Having failed to make inquiry when it was his duty to do so, he occupies no better position than he would have occupied if he had

made inquiry and learned the truth in regard to the title to the premises.

It is, however, claimed in the argument that the title to the premises was placed and kept in the name of Hannah Duncan to enable Daniel Joiner to avoid the payment of certain indebtedness which creditors were endeavoring to collect from him. We find no evidence in the record upon which this position can be predicated. The only evidence found in the record which is relied upon by counsel is the following, testified to by Larkin Duncan: "Joiner's brother was claimed to be dead and he was not, and so this property was bought with the money, don't you see, and he did not know but what he might get into some trouble yet about it and therefore he would not take the deed. The trouble was with Charles Thomas at that time. The trouble existed a long time before this arrangement was made." Conceding the truth of the statement made by the witness, it falls far short of establishing the fact that Duncan was keeping the property out of his own name to avoid the payment of his debts. Moreover, the premises were the homestead of the Joiners, worth not exceeding $1000, and hence were not liable to be taken and sold on judgment, and hence, if there had been judgments against them it is unreasonable to suppose they would have resorted to any scheme to keep the property out of their names to defeat the collection of debts which could not be collected.

After a careful consideration of the evidence we are satisfied complainants were entitled to the relief prayed for in the bill. The decree of the circuit court will therefore be reversed and the cause will be remanded, with directions to enter a decree in favor of the complainants, as prayed for in the bill.        *Reversed and remanded.*