MERCHANTS' & FARMERS' STATE BANK OF SULLIVAN *et al.*

*v.*

REBECCA DAWDY *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 5, 1907.*

1. CONTRACTS—*adjustment of respective rights of widow and heir sufficient consideration for agreement to exchange deeds.* The adjustment of the respective rights of the widow and the heir is sufficient consideration for their agreement to exchange deeds giving the heir a certain tract of land and the widow a smaller tract in lieu of her homestead and dower.

2. NOTICE—*possession is notice of the possessor's rights in land.* Possession of land by a widow under an agreement with her daughter, the heir, that she should have a deed to the land in lieu of her homestead and dower in the entire estate, the balance of which the widow had quit-claimed to the daughter, is notice to subsequent purchasers of the existence of the contract under which the widow claims, to the same extent as though the contract had been in writing and recorded.

3. APPEALS AND ERRORS—*when objection to evidence cannot be first urged on appeal.* Where the only objection urged on the trial against admitting the record of a deed in evidence is that it is irrelevant and incompetent, an objection that the loss of the original deed had not been shown cannot be urged on appeal.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

Job Evans died intestate in March, 1870, owning two hundred and fifteen acres of land in Moultrie county, including the south-east quarter of the south-west quarter of section 17 and the north-west quarter of the north-west quarter of section 20, all in township 13, range 5, upon which he resided with his family. He left surviving him Rebecca Evans, his widow, and a daughter, Eliza, who soon after married W. A. Short. In 1883 these two forty-acre tracts were sold by the sheriff under execution issued upon a judgment rendered by the circuit court of Moultrie

county against W. A. Short, Eliza E. Short and others. No redemption having been made, the sheriff executed to James H. Johnson a deed for the south-east quarter of the south-west quarter of section 17 and the north half of the north-west quarter of the north-west quarter of section 20, containing sixty acres, and to William Elder a deed for the south half of the north-west quarter of the north-west quarter of section 20, containing twenty acres. The dower and homestead of Rebecca Evans in the estate of Job Evans were never formally assigned. In 1871 she married Joseph Winskill, and soon after, together with her husband, made a quitclaim deed to the daughter for one hundred and thirty-five acres, being all the land which had belonged to her husband except the two forty-acre tracts above mentioned. She continued to reside upon the eighty acres until 1891, when she moved to Sullivan, where she has since resided. In the meantime she was divorced from Winskill and married Andrew J. Dawdy, who has since died. On January 29, 1906, she executed to her nephew, Z. T. Deeds, a deed for said two forty-acre tracts in fee simple, subject to a life estate in herself. The appellant the Merchants' and Farmers' State Bank of Sullivan having succeeded to the title of William Elder to the twenty acres under his sheriff's deed, and the appellant Almond Nicholson to the title of James H. Johnson to the sixty acres under his sheriff's deed, they filed a bill in the circuit court of Moultrie county praying for the assignment of dower to the said Rebecca Dawdy, the cancellation of her deed to Z. T. Deeds as a cloud upon their title, and for the perpetuation of evidence in regard to a prior deed in their chain of title not necessary to be further noticed here.

The defendants answered, averring, among other things, that soon after the death of Job Evans his widow and daughter divided his land so that the widow became the owner of the eighty acres and the daughter the owner of all his other lands, each free from any claim of the other; that Rebecca, the widow, conveyed to the daughter, Eliza,

the part so set apart to her and that Eliza promised to deed to Rebecca her part of the land; that each took possession of the portion so set apart to her, and that Rebecca Dawdy has ever since been in the exclusive, open, adverse possession of the said eighty acres, claiming to be the owner thereof.

Upon a hearing of the cause the court ordered that certain testimony be perpetuated, and as to all other relief decreed that the bill be dismissed for want of equity. To reverse that decree complainants have appealed to this court.

E. J. MILLER, for appellants.

JOHN E. JENNINGS, and HARBAUGH & THOMPSON, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

If Job Evans' widow and daughter agreed to divide his land by exchanging deeds, so that the widow should become the owner in fee of the eighty acres involved in this suit and the daughter of the rest of the land, a consideration of any other question in the case is unnecessary. It is manifest that some agreement was made between them. The daughter married about six months after her father's death and her mother a few months later. Soon after the latter event the mother made a quit-claim deed to the daughter of one hundred and thirty-five acres, and from that time the daughter was in the exclusive possession and control of that part of the land while the mother remained in the exclusive possession and control of the remaining eighty acres. Both Mrs. Dawdy and W. A. Short, the daughter's husband, the daughter being dead at the time of the hearing, testified that Mrs. Dawdy was to have the eighty acres as her own and was to have a deed for it.

It is objected to the testimony of these witnesses that it was incompetent and did not prove anything, because it consisted largely of statements of conclusions instead of facts

and conversations and was given in response to leading questions which were objected to. A large part of the testimony is justly subject to this criticism, and the force of all of it is, in consequence, very much weakened. But it must be considered that Mrs. Dawdy was an uneducated woman, past seventy-one years old, testifying to events which occurred thirty-five years before she was a witness. It is not surprising that very little even of the substance of conversations or important circumstances can be narrated by her. But disregarding the incompetent testimony of these witnesses, enough remains to satisfactorily show, if it is true, that the mother and daughter agreed upon a division of the land by which each should be the owner of her portion free from any claim of the other. Without regard to the $800 which Mrs. Dawdy testified she had invested in the land, the adjustment of the respective rights of the parties was a sufficient consideration for the agreement to exchange deeds.

In 1884, after the sheriff's sale under which appellants derive their title, Mrs. Short and her husband made a quitclaim deed of the premises to Andrew J. Dawdy. Short testified that Dawdy agreed to redeem from the sheriff's sale if they would make him a quit-claim deed. Mrs. Short was not present, but when Short told her about it she claimed she had no interest in the land but consented to make the deed. It is probable they thought, no deed having been made, that the sheriff's sale would convey the title to the purchaser.

There is some evidence in the record of statements by Mrs. Dawdy indicating that she claimed only a life estate in the land, and expected it, after her death, to go to Johnson. It is true that the record title of sixty acres was in Johnson, and it is not unnatural that she should be apprehensive of the effect of such condition upon her rights, should hesitate to make repairs, and should declare that she was going to have it as long as she lived and they could do

with it what they wanted after she died. It was for the court to determine to what extent her testimony was discredited by her statements, and we cannot say, under all the circumstances, that the court erred in finding that the agreement for the division of the land was made as averred in appellees' answer.

Mrs. Dawdy has been in the exclusive possession of the premises in controversy since the death of Job Evans, in 1870. Her possession was notice to all persons of all her rights therein. Actual possession of land is notice equal to the record of a deed under which the party in possession claims. A purchaser is bound to inquire by what right or title the party in possession holds, and he will take subject to that title, whatever it may be. (*Joiner* v. *Duncan,* 174 Ill. 252; *Coari* v. *Olsen,* 91 id. 273.) The title taken by appellants and their grantors through the sale under execution against Mrs. Short was therefore subject to the contract between Mrs. Short and her mother, to the same extent as if that contract had been in writing and duly recorded.

It is urged that it was error to admit in evidence the record of the deed from Mrs. Dawdy to her daughter for the one hundred and thirty-five acres without showing the loss of the original. The objection made to the introduction of the record was that it was incompetent and irrelevant. If the specific objection now urged had been made, the original would no doubt have been produced or its absence explained. The general objection will not avail where, if made specific, the objection might be obviated. *Rich* v. *Trustees of Schools,* 158 Ill. 242.

We find no error in the record, and the decree will be affirmed.

*Decree affirmed.*