SECOND DISTRICT—OCTOBER, 1920.    167

Austin v. Public Service Co. of Northern Illinois, 219 Ill. App. 167.

Ralph C. Austin, Administrator, Appellee, v. Public Service Company of Northern Illinois, Appellant.

Gen. No. 6,791.

1. APPEAL AND ERROR, § 422*—*when want of definiteness must be raised below.* A defendant who filed no demurrer to the legal sufficiency of the declaration and made no motion for a bill of particulars is not in a position, on appeal from the judgment, to object to the sufficiency of the declaration on the ground that its averments were too general and that, by reason of the failure of plaintiff to specify the grounds on which he based his right to recover, defendant did not have sufficient notice of the character of the case to which it must present a defense, especially where the trial was the second trial of the controversy and all of the facts and circumstances as to the right of action had been brought out in the previous trial.

2. EVIDENCE, § 52*—*what evidence is properly excluded.* Evidence as to a matter which is not an issue in a case is properly excluded.

3. EVIDENCE, § 92*—*when witness may not testify as to effect of act.* It is not error to refuse to permit a witness to answer a question as to what is the general effect on persons climbing over a stream of water where there is a rapid current, since he could only have had knowledge thereof either from the statements of others or from his personal experience.

4. EVIDENCE, § 52*—*when properly excluded.* Evidence which can only result in raising a false issue is properly excluded.

5. WITNESSES, § 275*—*what contradictory statements of witness may be shown.* While a party may call the attention of his witness to previous contradictory statements of the witness, he cannot introduce evidence to show that certain contradictory statements had been made by the witness.

6. APPEAL AND ERROR, § 1241*—*when party cannot complain of error in instructions.* One party cannot complain on appeal of an instruction given at the request of the other where such instruction states the law substantially to the effect as it was stated in an instruction which he requested.

7. ELECTRICITY, § 29*—*when instruction as to electricity is proper.* In an action to recover for the death of a boy through coming in contact with defendant's electric wire which carried a current of 4,400 volts, an instruction to the effect that electricity is a silent,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

deadly and instantaneous force, and the company handling it is bound to know the danger incident to its use in a public highway and to guard against accident by a degree of care commensurate with the danger, is not objectionable as emphasizing too greatly the dangers incident to handling electricity and impressing the jury that it is a source of danger no matter in what quantity or voltage used.

8. ELECTRICITY, § 29*—*when instruction as to use of bridge is not erroneous.* In an action to recover for the death of a boy alleged to have been caused by his coming in contact with defendant's electric wire which was strung above the top girder of a span of a public bridge, when he had climbed up an inclined beam of such span to the girder to get at a bird's nest, an instruction to the effect that the boy had a legal right to go upon any part of the bridge is proper, and it is not necessary that it should limit his right to the use of the bridge to use in a reasonable manner and defendant's liability to the same liability to which it could be held if it had owned the bridge.

9. ELECTRICITY, § 22*—*when boy is not trespasser.* A boy climbing an inclined beam of a span of a public highway bridge to the top girder thereof is not a trespasser, as to an electric company whose wires are strung above the girder, but is rightfully thereon.

10. ELECTRICITY, § 12*—*what care is required in protecting wires.* An electric power company whose wires carrying a high voltage, are supported by poles affixed to a public highway bridge at such a height that they may come in contact with one walking on the top girder of the bridge is bound to anticipate that persons may walk there and to use a degree of care commensurate with the danger.

11. INSTRUCTIONS, § 81*—*when instruction is erroneous.* An instruction calling the jury's attention to certain evidence and directing them to ignore it is properly refused.

12. TRIAL, § 276*—*what must be included in special interrogatory.* A special interrogatory, in an action to recover for the death of plaintiff's intestate, acquiring an answer as to the degree of care required of the decedent, is properly refused where it omits essential elements.

13. TRIAL, § 268*—*when special interrogatory should not be given.* A special interrogatory as to a matter not involved in the controversy is properly refused.

14. TRIAL, § 268*—*what is essential of special interrogatory.* A special interrogatory is properly refused where the answer would have been a mere matter of conjecture on the jury's part.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

15. TRIAL, § 274*—*what is proper form of special interrogatory.* Special interrogatories referring to evidentiary facts and not to the ultimate facts which the jury are required to pass upon in reaching their verdict are properly refused.

16. DEATH, § 44*—*what evidence is improper.* In an action to recover for the death of plaintiff's intestate, admission of the verdict of the coroner's jury in evidence is properly refused.

17. APPEAL AND ERROR, § 812*—*how questions of improper conduct of counsel must be presented.* Questions of improper conduct of counsel, or other matters claimed to be improper in the conduct of a trial, which occur in the court's presence, cannot be presented for review on *ex parte* affidavits, but must be recited in the bill of exceptions and vouched for by the certificate of the trial judge.

18. DEATH, § 67*—*when verdict is not excessive.* $5,000 for the death of a 13-year-old boy by coming in contact with defendant's electric wire, *held* not excessive.

Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1920. Affirmed. Opinion filed October 27, 1920. Rehearing denied December 2, 1920.

EDGAR B. ELDER and BARR, MCNAUGHTON & BARR, for appellant.

SNAPP, HEISE & SNAPP, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This is a suit brought by the appellee, Ralph C. Austin, as administrator of the estate of Louis Hartel, deceased, against the appellant, Public Service Company of Northern Illinois, for the benefit of the next of kin of the deceased, to recover damages resulting from the death of Hartel, who was a boy 13 years old, and whose death it is alleged was caused by his coming in contact with a highly charged electric wire of the appellant, while he was on a girder on Brandon bridge, a public highway bridge spanning the Des Plaines River, in the town of Joliet, in Will county.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

170 ' APPELLATE COURTS OF ILLINOIS. .

Austin v. Public Service Co. of Northern Illinois, 219 Ill. App. 167.

There was a trial by jury, and a verdict and judgment against the appellant for $5,000, from which this appeal is prosecuted.

This case was considered and passed upon by this court on a former appeal, and was reversed and remanded for another trial. *Austin v. Public Service Co. of Northern Illinois,* 215 Ill. App. 297. And the circumstances under which Hartel met his death are stated in the opinion previously filed, and are as follows: "Brandon bridge is about 300 feet long, all of iron except the floor, which is of wood. It consists of three spans standing 16 feet above the floor. The beams or girders on the ends and along the top are 15 or 16 inches wide. At each outer edge of the beams there is a row of rivets with protruding heads. The end beams run up at an angle of about 45 degrees, and can be ascended easily by an active man or boy. Appellant had wires on poles bolted to the bridge within reach of a person walking along on the top girder. Some, but not all, of these wires carried high-tension currents. The high-tension wires had originally been insulated and suspended too far above the top of the bridge to be so reached. At the time of the accident, and for a considerable time before, the wires had been allowed to sag and the insulation to rot and become ineffective. There was nothing in the appearance of the high-tension wires to indicate their dangerous character, or to distinguish them from the harmless wires. There were no signs or warnings on the bridge or in the vicinity. The wires were installed and maintained by the appellant by sufferance of the public authorities, and without other right or claim of right. For a considerable time before the accident they were within easy reach of the top of the span, and contact with them meant instant death. There was much travel on the public highway and across the bridge, and for a long time many children had frequented that locality, playing thereabout; and the boys were in the

habit of running up and down the angling beams at the end of the bridge. Louis Hartel was there with four other boys that had been accustomed to so playing on and using the bridge. They noticed a bird's nest at the top of the girder. Hartel went up the incline and pulled out the nest, walked along the top of the girder about 25 feet above the floor of the bridge, reached up and took hold of a wire carrying 4,400 volts, and was instantly killed, his body dropping into the stream below.''

A number of grounds are argued on this appeal for reversal of the judgment. It is claimed that the averments in the declaration are too general and should have been more specific as to the particular grounds upon which the appellee based his right to recover; and that by reason of the general terms in which the declaration is drawn, the appellant did not have sufficient notice of the kind of a case to which it was expected to present its defense. No claim is made that the declaration by its averments is not legally sufficient, as a statement of a cause of action, and no demurrer was filed to question its legal sufficiency; and appellant did not make any motion for a bill of particulars, which it had a right to make if it thought it was entitled to a more specific statement of the appellee's cause of action. Under these circumstances appellant is not now in position to question the sufficiency of the declaration on the ground stated. Moreover, it is apparent that appellant must have had a sufficient knowledge of the specific matters constituting appellee's cause of action at the second trial of the controversy, inasmuch as all the facts and circumstances concerning his right of action had been brought out on the previous trial.

The appellant contends that the court erred in excluding certain testimony offered on the trial. Herbert Willard, who was a witness for appellant, and who had testified that he was construction foreman

for the appellant, and had experience in climbing poles and other high elevations, located over bodies of water in which there was a rapid current, was then asked the following question: "What, if any, difference is there between climbing over a rapidly running stream, and climbing to a high elevation on the ground?" Also: "Do you know what the general effect is on persons climbing over a stream of water where there is a rapid current?" Both questions were objected to, and objection sustained. We think the objections were properly sustained. The difference between climbing over a rapidly running stream and of climbing to a high elevation on the ground was not a matter of issue in the case, nor was the matter of the general effect on persons climbing over a stream of water where there is a rapid current; moreover, the witness could only have had knowledge about this matter from what he had heard others say, or from personal experience, neither of which was competent as evidence; an answer to the question could only have resulted in raising a false issue. Appellant also complains of the refusal of the court to permit it to introduce evidence to show that certain contradictory statements had previously been made by the witness Matt Gollick, whom the appellant had called in its behalf. The court permitted counsel to call the witness' attention to such alleged former statements and this was proper; but under the rule upheld in *Chicago City Ry. Co. v. Gregory*, 221 Ill. 591, the evidence offered was properly excluded. And we find no substantial error in the record, either in the admission or exclusion of evidence.

It is contended that there was error in the giving and refusing of instructions. Appellant complains of instructions 4 and 5 given for appellee, which contain statements concerning the degree of care required of a boy 14 years of age. We are of opinion that the instructions correctly state the law; and inasmuch as

the law is stated substantially to the same effect in instruction 19, which was given at the instance of appellant, it is not now in position to say that it was not applicable to the present case. Complaint is also made of the giving of instruction No. 3, by which the jury were told that electricity is a silent, deadly and instantaneous force, and a company handling it is bound to know the dangers incident to its use in a public highway, and is bound to guard against accident by a degree of care commensurate with the danger incident to its use. It is argued that this instruction put too great emphasis on the dangers incident to the handling of electricity, and tended to impress upon the minds of the jury that it is a source of danger no matter in what quantity or voltage it is used. There may be cases where the objections made might have a bearing, but they cannot be considered as well taken in a case where the wire carried an electric current with a voltage of 4,400. The instruction is drawn in conformity with the doctrine held in *Hausler v. Commonwealth Electric Co.*, 240 Ill. 201, and we think was properly given in this case.

Complaint is also made of instruction 6, because by it the jury were told that Hartel had a legal right to go upon any part of the bridge in question. It is contended that instead of this instruction the court should have given appellant's instruction No. 27, in which it is stated that the deceased, Hartel, was entitled to use the bridge in question only in a reasonable manner; and that the appellant could be held to no greater liability in this case than if it were the owner of the bridge. We are of opinion that the giving of instruction G was proper. It embodies the same principles of law which are announced in *Commonwealth Electric Co. v. Melville*, 210 Ill. 70; and in *Rowe v. Taylorville Electric Co.*, 213 Ill. 318; and *Trapp v. Rockford Electric Co.*, 186 Ill. App. 379; also in the former opinion of this court. And we regard instruction No. 27, which

asserts that appellant could not be held to a greater liability than if it were owner of the bridge, as clearly erroneous. The evidence shows that the Hartel boy was not a trespasser, but had a right to be on the girder of the bridge in question, which was a part of the public highway; and it was neither illegal nor wrongful for him to walk along on the top of the girder. His act, in doing so, was evidently the outgrowth of boyish enterprise and play; it was a natural and not an uncommon incident; one which might occur at any time in the usual pastimes or sports of boys of the age of the Hartel boy. The language of the Supreme Court in *Rowe v. Taylorville Electric Co., supra,* is clearly decisive of the question involved: "The streets of the city were not the private premises of defendant. The streets belong to the public, and the public, generally, have a right to use them. As a matter of fact, the defendant must be held to have anticipated that the public would use the streets as they had a right to do. * * * The defendant was not an insurer of the safety of the public, but it was bound to know the dangers incident to the use of the streets by it and to guard against such dangers by the exercise of care commensurate with them. * * * We explained in *Commonwealth Electric Co. v. Melville,* 210 Ill. 70, that in the case referred to the plaintiff received his injuries while on the roof of a building where he had no right to be, and was neither invited nor licensed to be, and we decided that a company operating wires carrying a dangerous current of electricity owes a duty to exercise reasonable care to prevent injury to others, wherever they have a right to go. The duty extends to every place where persons have a right to be, whether for business, convenience or pleasure." We are also of opinion that instructions 30, 31 and 32, which call attention to certain evidence and direct the jury to disregard it, were properly refused.

SECOND DISTRICT—OCTOBER, 1920.     175

Austin v. Public Service Co. of Northern Illinois, 219 Ill. App. 167.

Error is assigned on the refusal of the court to submit to the jury six special interrogations. Special interrogatory 1 would have required the jury to answer a question concerning the degree of care required of Hartel, from which several essential elements were omitted. Interrogatory 2 required the jury to answer as to whether the wires of the appellant were a source of danger to persons upon or passing' over Brandon bridge, and evidently had reference to persons on the floor of the bridge, which was not a matter involved in the controversy. The answer to interrogatory 3 would have been a mere matter of conjecture on the part of the jury. Special interrogatories 4, 5 and 6 refer to evidentiary facts, and not to the ultimate facts, which the jury were called upon to pass in reaching their verdict. We are therefore of opinion that the court did not err in refusing to submit the special interrogatories to the jury.

The refusal of the court to admit in evidence the verdict of the coroner's jury is in accordance with the rule established in *Spiegel's House Furnishing Co. v. Industrial Commission,* 288 Ill. 422.

The appellant also urges as a ground for reversal of the judgment that one of the counsel for appellee was guilty of improper conduct, in that he held a conversation with a witness in the presence of the jury. The impropriety of this conversation, and what it related to, is set forth in an affidavit by Benno F. Harms. It is there stated that the counsel improperly asked the age of the witness. There may have been some impropriety in the inquiry counsel made under the circumstances presented, but it is not apparent how appellant could have been injured by the answer of the witness as to his age, assuming that the jury heard it, which does not appear. Questions of improper conduct of counsel, however, or other matters claimed to be improper in the conduct of a trial which occur in the presence of the court, cannot be presented

for review on *ex parte* affidavits. Whatever occurs in open court, and in its presence, and therefore within its knowledge, must be recited in the bill of exceptions and vouched for by the certificate of the judge. *Tindall v. Chicago & N. W. Ry. Co.*, 200 Ill. App. 556; *North Chicago St. Ry. Co. v. Cotton*, 140 Ill. 502.

It is also claimed that the verdict and judgment for $5,000 is excessive. The ascertainment of the amount of damages in a case of this kind is usually considered as peculiarly within the sound judgment and discretion of the jury, and in their peculiar province to determine. We cannot say that under the facts and circumstances shown by the evidence that the amount appears to be excessive, and the amount found has been repeatedly upheld in similar cases. *Northern Trust Co. v. Grand Trunk Western R. Co.*, 207 Ill. App. 11; *Trapp v. Rockford Electric Co., supra.*

We find no reversal error in the record. The judgment is affirmed.

*Judgment affirmed.*